# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### 3:22-cv-244-MOC-DSC

| | |
|---|---|
| LINDA WASHINGTON, )<br><br>)<br><br>)<br>        **Plaintiff,**        )<br><br>)<br>**vs.**        )<br><br>)<br><br>)        **ORDER**<br><br>)<br>**CEDAR FAIR, L.P.,**        )<br>**CAROWINDS, LLC, CITY OF**        )<br>**CHARLOTTE, RICHARD VIVAS,**        )<br>**JOHN DOE, and JOHN DOE 2,**        )<br><br>)<br>        **Defendants.**        )<br>_____ ) | |

 

**THIS MATTER** is before the Court on Defendant Richard Vivas' ("Defendant Vivas")

Motion to Dismiss the lawsuit against him in his individual and official capacity pursuant to

Rules 12(b)(2), 12(b)(4), and 12(b)(5) of the Federal Rules of Civil. (Doc. No. 23). For the

following reasons, Defendant Vivas's motion is **GRANTED**.

## I.    BACKGROUND

Plaintiff, a minor, visited Carowinds amusement park on or about April 26, 2019. (Doc.

No. 1-1 at ¶ 21). Plaintiff was with minor friends, and they were waiting in line to get on one of

the roller coasters. (Id. at ¶¶ 24–25). As Plaintiff and his friends were waiting in line, they began

to engage in "horse play." (Id. at ¶ 26). Without warning, a group of security guards approached

Plaintiff and his friends, and they were pulled out of the line for the roller coaster by the security

guards. (Id. at ¶¶ 27–28). The security guards informed the minors that there was a report from

an employee of Carowinds which alleged that Plaintiff and his friends were fighting. (Id.).

1

Plaintiff and his friends repeatedly denied this allegation. (Id.). Next, the security guards began

taking Plaintiff and his friends to a different location in the park. (Id. at ¶ 30). The security

guards singled out Plaintiff and told Plaintiff's friends to move away from him. (Id.). One

security guard revealed his baton, allegedly pushed Plaintiff, and told Plaintiff's friends that, if

they kept following Plaintiff, they would "end up just like him." (Id. at ¶ 31).

Plaintiff, scared, nervous, and fearing for his safety, broke away from the security guards'

grip and ran away from them. (Id. at ¶ 32). Plaintiff began running out of Carowinds, and at that

point, Defendant Officer Richard Vivas, a Charlotte-Mecklenburg Police Department ("CMPD")

officer who was working off-duty, started chasing Plaintiff, tackled him to the ground, and put

handcuffs on him. (Id. at ¶¶ 33, 58, 63, 79, 82).

Defendant Vivas then took Plaintiff back into Carowinds in handcuffs. (Id. at ¶ 33). As a

result of this altercation, Plaintiff sustained injuries to his hand and torn clothing. (Id. at ¶¶ 33,

36). Plaintiff was taken to a holding room somewhere inside Carowinds, where he remained

handcuffed, and Defendant Vivas took his cell phone and wallet. (Id. at ¶ 34). Eventually,

statements of an unknown Carowinds employee confirmed that the children had only been

engaged in horseplay rather than fighting. (Id.). At this point, an adult demanded the release of

Plaintiff and Plaintiff's mother, Linda Washington, was contacted. (Id. at ¶¶ 35–36). Plaintiff's

mother arrived shortly thereafter where she found Plaintiff in visible distress, with torn clothing

and in handcuffs. (Id. at ¶ 36). Plaintiff was released from his handcuffs and left with his mother.

(Id. at ¶ 38).

## II.     PROCEDURAL BACKGROUND

2

Plaintiff, by and through his guardian ad litem Linda Washington, filed their Complaint on or about April 26, 2022, in the North Carolina General Court of Justice, Mecklenburg County Superior Court. (Doc. No. 1-1). Plaintiff filed an Amended Complaint on May 20, 2022. (Doc. No. 1-1). Also on May 20, 2022, Plaintiff served Defendant in his official capacity as a Charlotte-Mecklenburg Police Officer by mailing a summons and copy of the complaint to Defendant in his official capacity to the Charlotte-Mecklenburg Police Department, Defendant's place of employment. (Id.). Defendant removed the action to this Court on May 27, 2022. (Doc. No. 1). Plaintiff issued a summons for Defendant in his individual capacity on July 21, 2022, 62 days after Plaintiff filed the amended complaint and 55 days after Defendant Vivas removed this action to federal court. (Doc. No. 16). Defendant now seeks dismissal of the lawsuit against him in both his individual and official capacities under Rules 12(b)(2), 12(b)(4), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 23).

### III.    STANDARD OF REVIEW

#### a.  Rule 12(b)(2) Standard

Rule 12(b)(2) provides for dismissal for "lack of personal jurisdiction." FED. R. CIV. P. 12(b)(2). Under Rule 12(b)(2), the defendant is required to affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage. Grayson v. Anderson, 816 F.3d 262, 267 (4th Cir. 2016) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). A summons must be issued properly and served before a federal court may exercise personal jurisdiction over a defendant. Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987). When process or service of process is deficient and personal jurisdiction is lacking, a case must be dismissed under Rule 12(b)(2). See, e.g., Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984); Evans v. B.F.

3

Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Although the court may consider affidavits submitted by both parties, factual disputes and all reasonable inferences must be made in favor of the party asserting jurisdiction. White v. Aetna Life Ins. Co., No. 3:20-CV-204-MOC-DSC, 2021 WL 467210, at *2 (W.D.N.C. Feb. 9, 2021).

### b. Rule 12(b)(4) and Rule 12(b)(5) Standard

A motion to dismiss under Rule 12(b)(4) challenges the sufficiency or "form" of the process itself, while a motion to dismiss under Rule 12(b)(5) challenges the sufficiency of the act of "service" of process. See FED. R. CIV. P. 12(b)(4), (b)(5); Lee v. City of Fayetteville, No. 5:15-CV-638-FL, 2016 WL 1266597, at *2 (E.D.N.C. Mar. 30, 2016). In other words, a Rule 12(b)(4) motion to dismiss objects to a defect in the content of the documents served, while a Rule 12(b)(5) motion to dismiss objects to a defect in the act (or lack) of delivery.

Where a motion to dismiss is filed based on insufficient process or insufficient service of process pursuant to Rules 12(b)(4) and (5), affidavits and other materials outside the pleadings may be properly submitted and considered. Michelson v. Miller, No. 1:19-CV-00311-MR, 2021 WL 4295319, at *1 (W.D.N.C. Sept. 20, 2021)

When service of process is challenged, the plaintiff bears the burden of establishing that process was sufficient and that service of process was effectuated in accordance with Rule 4 of the Federal Rules of Civil Procedure. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993) (holding the plaintiff must prove service of process if challenged).

In determining whether the plaintiff has satisfied his burden, the court must construe the technical requirements liberally "as long as the defendant had actual notice of the pending suit." Id. "When the process gives the defendant actual notice of the pendency of the action, the rules ... are entitled to a liberal construction" and "every technical violation of the rule or failure

4

of strict compliance may not invalidate the service of process." <u>Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.</u>, 733 F.2d 1087, 1089 (4th Cir. 1984). Nevertheless, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." <u>Id.</u>

### c. Rule 12(b)(6) Standard

A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the complaint fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." <u>Id.</u> at 679 (citations omitted).

### IV. DISCUSSION

Plaintiff has brought claims against Defendant Vivas in both his individual and official capacities. Defendant was served in his official capacity on or about April 29, 2022. (Doc. No. 1-

1 at 8). Defendant was served in his personal capacity with a federal summons, a copy of the superior court civil summons, and a copy of the amended complaint on July 22, 2022, at his personal residence by private investigator, Johnny Corcoran. (Doc. No. 29).

Defendant Vivas seeks to dismiss Plaintiff's claims against him in both his individual and official capacities. First, Defendant Vivas contends that this Court lacks personal jurisdiction over him in his individual capacity, and he argues that the claims against him in his individual capacity should be dismissed because Plaintiff did not meet North Carolina's procedural requirements for service of summons. Second, Defendant Vivas argues that the official capacity claims against him should be dismissed as duplicative, because Plaintiff has also included as a defendant the entity for which Defendant Vivas works in his official capacity. Third, Defendant Vivas asserts that Plaintiff's state tort claims against Defendant Vivas in his individual capacity are barred by the doctrine of public official immunity. Lastly, Defendant Vivas states that Plaintiff's constitutional claims should be dismissed because they have been brought directly under the U.S. Constitution and there is no direct cause of action against municipal actors under the U.S. Constitution.

In response, Plaintiff claims that Defendant Vivas was properly served in his individual and official capacity pursuant to FED. R. CIV. P. 4. Plaintiff further argues that Plaintiff's claims against Defendant Vivas are not barred by public official immunity, because there are questions of material fact as to whether Defendant acted maliciously, corruptly, or outside the scope of his authority. Lastly, Plaintiff proposes the remedy for any ambiguity regarding constitutional claims would be for Plaintiff to seek leave to amend the complaint to include a separate 42 U.S.C. § 1983 claim, now that the Defendant has been served and the matter has been removed to the Western District of North Carolina.

### a. The Claims Against Defendant Vivas in His Individual Capacity Must be Dismissed Because Plaintiff Did Not Satisfy North Carolina's Procedural Requirements for Service of Summons.

Defendant Vivas contends that this Court lacks personal jurisdiction over him in his individual capacity and moves to dismiss the action against him in his individual capacity pursuant to Rules 12(b)(4), 12(b)(5), and 12(b)(6) for lack of delivery of the summons, and for failure to state a claim upon which relief may be granted.

Proper delivery of summons is a prerequisite to personal jurisdiction over a defendant in court. Here, where the plaintiff originally filed suit in North Carolina state court, the North Carolina Rules of Civil Procedure dictate the requirements of service of summons before the case was removed to federal court. Smith v. UNC Health Care Sys., No. 1:20-CV-52, 2021 WL 1146936, at *1 (M.D.N.C. Mar. 25, 2021).

North Carolina Rule of Civil Procedure 4(a) stipulates that a summons must be issued within five days of the filing of a complaint in North Carolina state court. N.C.G.S. § 1A-1 Rule (4)(a). The North Carolina Court of Appeals explained that Rule 4(a) "contemplates the continuance of the present practice of ordinarily having summons issue simultaneously with the filing of the complaint. The five-day period was inserted to mark the outer limits of tolerance in respect to delay in issuing the summons." Stinchcomb v. Presbyterian Med. Care Corp., 211 N.C. App. 556, 560 (2011). If a complaint has been filed, but a proper summons is not issued within the five days allowed under the rule, "the action is deemed never to have commenced." Wayne Cnty. ex rel. Williams v. Whitley, 72 N.C. App. 155, 156 (1984); See also Phoenix Colvard Dev. v. Sheldon Good & Co. Int'l, LLC, No. 5:08-CV-00072, 2009 WL 159412, at *2 (W.D.N.C. Jan. 21, 2009) ("North Carolina law also provides that if no summons is issued

7

within five days of the filing of the complaint, the action abates.").

Here, Plaintiff failed to issue a summons to Defendant Vivas in his individual capacity within five days of filing a complaint. Plaintiff filed their Complaint on or about April 26, 2022, in the North Carolina General Court of Justice, Mecklenburg County Superior Court. Plaintiff did not issue a summons to Defendant Vivas in his individual capacity within five days of April 26, 2022. Plaintiff subsequently filed an Amended Complaint in the same court on May 20, 2022. However, Plaintiff did not issue a summons to Defendant Vivas in his individual capacity within five days of May 20, 2022. Indeed, Plaintiff only issued a summons for Defendant in his individual capacity on July 21, 2022, 62 days after Plaintiff filed their amended complaint. (Doc. No. 16). Therefore, Plaintiff clearly did not meet North Carolina Rule of Civil Procedure 4(a)'s requirements for service of summons and the action is abated.

Furthermore, the fact that this case was removed to federal court does not revive Plaintiff's abated claim against Defendant Vivas. Removal to federal court cannot be used to resurrect a claim that is not viable under state law at the time of removal. When a case is removed to federal court, "state law governs the sufficiency and service of process before removal." Smith v. UNC Health Care Sys., No. 1:20-CV-52, 2021 WL 1146936, at *1 (M.D.N.C. Mar. 25, 2021). A plaintiff may be "afforded additional time to complete service" if service of process is defective or was not perfected before the case's removal. Rice v. Alpha Sec., Inc., 556 F. App'x 257, 260 (4th Cir. 2014). However, the Fourth Circuit has held that additional time will not be granted "to cases that 'would have been dismissed as time-barred had it remained in state court.'" Id. at 260 (citing Marshall v. Warwick, 155 F.3d 1027, 1033 (8th Cir. 1998)). In other words, "the removal of a case to federal court cannot breathe jurisprudential life

8

in federal court to a case legally dead in state court." <u>Id.</u> (internal quotation marks and citation omitted).

In the instant case, Plaintiff filed the complaint, five days elapsed without issuance of a summons to Defendant Vivas in his individual capacity, and only then was the case removed to federal court. Therefore, the case was legally dead when it arrived in federal court and is ripe for dismissal. <u>See, e.g.</u>, <u>Phoenix Colvard Dev. v. Sheldon Good & Co. Int'l, LLC</u>, No. 5:08-CV-00072, 2009 WL 159412, at *3 (W.D.N.C. Jan. 21, 2009) ("[A] case may be removed from state court even if 'jurisprudentially dead' under state law. Upon motion of the defendant, the case will then be dismissed as barred by state law.").

Finally, Plaintiff's attempt to deliver service of summons to Defendant Vivas in his official capacity does not satisfy the requirement that Defendant Vivas also receive service of summons in his individual capacity. When a plaintiff sues a defendant in both his individual and official capacities, the plaintiff must provide service of summons to the defendant in both capacities. <u>Allen v. Coffey</u>, No. 5:20-CV-144-BO, 2021 WL 3684247, at *1 (E.D.N.C. Aug. 18, 2021), <u>aff'd,</u> No. 21-1934, 2022 WL 34152 (4th Cir. Jan. 4, 2022). A plaintiff may not serve a defendant in his individual capacity by "leaving process at an individual defendant's place of business[….]" <u>Lee v. City of Fayetteville</u>, No. 5:15-CV-638-FL, 2016 WL 1266597, at *6 (E.D.N.C. Mar. 30, 2016). Therefore, when Plaintiff mailed a summons and complaint to Defendant Vivas at his place of employment, it did not provide service of summons to Defendant Vivas in his individual capacity.

In sum, because Plaintiff did not meet North Carolina's requirements for service of summons, Plaintiff's claims against Defendant Vivas in his individual capacity were abated. Moreover, neither removal to federal court nor service of summons to Defendant Vivas in his

official capacity rescues Plaintiff's abated claims. Therefore, Plaintiff's action against Defendant

Vivas in his individual capacity must be dismissed without prejudice, because Plaintiff did not

satisfy the procedural requirements of service of summons as required by Federal Rules of Civil

Procedure 12(b)(4) and 12(b)(5).

> **b. The Claims Against Defendant Vivas in His Official Capacity Are Redundant, Because the Government Entity for Which Defendant Vivas Works in His Official Capacity is Also a Named Defendant.**

Defendant Vivas also moves to dismiss the claims against him in his official capacity as

redundant. "Personal-capacity suits seek to impose personal liability upon a government official

for actions he takes under color of state law [....] Official-capacity suits, in contrast, generally

represent only another way of pleading an action against an entity of which an officer is an

agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (internal quotation marks and citation

omitted). In other words, "a plaintiff seeking to recover on a damages judgment in an official-

capacity suit must look to the government entity itself." Id. at 166. Therefore, when "a plaintiff

interposes a claim for damages against both a municipality and a municipal officer in her official

capacity, the official-capacity claim properly is dismissed in favor of a single claim against the

municipality." Lee v. City of Fayetteville, No. 5:15-CV-638-FL, 2016 WL 1266597, at *2

(E.D.N.C. Mar. 30, 2016); See also Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004).

Here, Plaintiff has named as defendants both Defendant Vivas in his official capacity and

the City of Charlotte, i.e., the entity of which Defendant Vivas is an agent. Because suing

Defendant Vivas in his official capacity is essentially a claim against the City of Charlotte, and

the City of Charlotte is already a named defendant, the claim against Defendant Vivas in

his official capacity will be dismissed as redundant. Talley v. City of Charlotte, No. 314-CV-

683-MOC-DCK, 2016 WL 8679235, at *13 (W.D.N.C. July 22, 2016) ("Therefore, in a suit where the plaintiff asserts a claim against a government entity, a suit against those individuals working in their official capacity for this government entity is redundant.").

## V.    CONCLUSION

For the reasons stated herein, the claims against Defendant Vivas in his individual and official capacity must be dismissed. This Court refrains from addressing Defendant Vivas' public official immunity and constitutional arguments, because the claims against him in both his individual and official capacity must be dismissed on other grounds. Lastly, because this Court grants Defendant Vivas' motion to dismiss, his previous motion to dismiss, (Doc. No. 9), is moot.

## ORDER

**IT IS THEREFORE ORDERED** that:

1. Defendant Vivas's Motion to Dismiss, (Doc. No. 23), is **GRANTED** and the claims against Defendant Vivas in his personal capacity are **DISMISSED without prejudice**.

2. Defendant's Visas's first Motion to Dismiss, (Doc. No. 9), is **TERMINATED** as **MOOT**.

3. The claims against Defendant Vivas in his official capacities are **DISMISSED as duplicative**.

Signed: February 1, 2023

Max O. Cogburn Jr.
United States District Judge