UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-244-MOC-DSC

| | |
|---|---|
| LINDA WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| ) | |
| CEDAR FAIR, L.P., ) | |
| CAROWINDS, LLC, CITY OF ) | |
| CHARLOTTE, RICHARD VIVAS, ) | |
| JOHN DOE, and JOHN DOE 2, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on Defendant City of Charlotte's ("Defendant City") Motion to Dismiss the lawsuit against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 10). For the following reasons, Defendant City's motion is **GRANTED** in part and **DENIED** in part.

I. BACKGROUND

Plaintiff, a minor, visited Carowinds amusement park on or about April 26, 2019. (Doc. No. 1-1, Amended Complaint at ¶ 21). Plaintiff was with minor friends waiting in line to get on one of the roller coasters. (Id. at ¶¶ 24–25). As Plaintiff and his friends were waiting in line, they began to engage in "horse play." (Id. at ¶ 26). Without warning, a group of security guards approached Plaintiff and his friends, and they were pulled out of the line for the roller coaster by the security guards. (Id. at ¶¶ 27–28). The security guards informed the minors that there was a report from an employee of Carowinds, which alleged that Plaintiff and his friends were fighting.

1

(Id.). Plaintiff and his friends repeatedly denied this allegation. (Id.). The security guards eventually began taking Plaintiff and his friends to a different location in the park. (Id. at ¶ 30). The security guards singled out Plaintiff and told Plaintiff's friends to move away from him. (Id.). One security guard revealed his baton, allegedly pushed Plaintiff, and told Plaintiff's friends that, if they kept following Plaintiff, they would "end up just like him." (Id. at ¶ 31).

Plaintiff, scared, nervous, and fearing for his safety, broke away from the security guards' grip and ran away from them. (Id. at ¶ 32). Plaintiff began running out of Carowinds, and at that point, Defendant Officer Richard Vivas, a Charlotte-Mecklenburg Police Department ("CMPD") officer who was working off-duty, started chasing Plaintiff, tackled him to the ground, and put handcuffs on him. (Id. at ¶¶ 33, 58, 63, 79, 82).

Defendant Vivas then took Plaintiff back into Carowinds in handcuffs. (Id. at ¶ 33). As a result of this altercation, Plaintiff sustained injuries to his hand and torn clothing. (Id. at ¶¶ 33, 36). Plaintiff was taken to a holding room somewhere inside Carowinds, where he remained handcuffed, and Defendant Vivas took his cell phone and wallet. (Id. at ¶ 34). Eventually, statements of an unknown Carowinds employee confirmed that the children had only been engaged in horseplay rather than fighting. (Id.). At this point, an adult demanded the release of Plaintiff, and Plaintiff's mother, Linda Washington, was contacted. (Id. at ¶¶ 35–36). Plaintiff's mother arrived shortly thereafter, where she found Plaintiff in visible distress, with torn clothing and in handcuffs. (Id. at ¶ 36). Plaintiff was released from his handcuffs and left with his mother. (Id. at ¶ 38).

## II. PROCEDURAL BACKGROUND

Plaintiff, by and through his guardian ad litem Linda Washington, filed their Complaint on or about April 26, 2022, in the North Carolina General Court of Justice, Mecklenburg County

Superior Court. (Doc. No. 1-1). Plaintiff filed an Amended Complaint on May 20, 2022. (Doc. No. 1-1). This action was removed to this Court on May 27, 2022. (Doc. No. 1). Defendant City now seeks dismissal of the lawsuit against it under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 10).

### III. STANDARD OF REVIEW

A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the complaint fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

### IV. DISCUSSION

Defendant City offers several reasons for dismissing this case. First, Defendant City argues that Plaintiff's has failed to plead facts sufficient to support liability against Defendant

3

City, because claims against Defendant City rely upon claims against Defendant Vivas, which are not viable due to public official immunity. Second, Defendant City contends that Plaintiff's claims are barred by contributory negligence. Third, Defendant City maintains that Plaintiff has not stated a plausible claim for negligent infliction of emotional distress and has not stated a plausible claim for gross negligence. And lastly, Defendant City contends that if all of Plaintiff's other claims are dismissed, Plaintiff's punitive damages claim must be dismissed as well. This Court will consider these arguments ad seriatim.

This Court has federal question jurisdiction over this case. See 28 U.S.C. § 1331. Furthermore, this Court has supplemental jurisdiction over the state law claims presented pursuant to 28 U.S.C. § 1367. District courts apply federal procedural law and state substantive law to claims arising out of supplemental jurisdiction. Stover v. Coll. of William & Mary in Virginia, No. 4:21CV150, 2022 WL 10585341, at *10 (E.D. Va. Oct. 18, 2022); See also Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996). The claims against Defendant City at issue here are state law claims. Therefore, this Court applies North Carolina substantive law to Plaintiff's claims against Defendant City.

    a. **Public Official Immunity**

The claims against Defendant City derive from Defendant Vivas' actions. Defendant City asserts that Defendant Vivas is entitled to public official immunity regarding his actions, and therefore, because there is no viable negligence claim against Defendant Vivas, there is no underlying negligence claim to support the claims against Defendant City, and Plaintiff's claims against Defendant City should be dismissed. In response, Plaintiff alleges that immunity was waived through the purchase of liability insurance.

4

It is well established that "without an underlying negligence charge against the officers, a claim of negligence against the municipality can not be supported." Turner v. City of Greenville, 197 N.C. App. 562, 568 (2009) (citing Prior v. Pruett, 143 N.C. App. 612, 622 (2001)).

Defendant City claims that there is no underlying negligence claim against Defendant Vivas because he is entitled to public official immunity. Public official immunity is a judicially-created form of governmental immunity "which shields public officials from personal liability for claims arising from discretionary acts or acts constituting mere negligence, by virtue of their office, and within the scope of their governmental duties." Bartley v. City of High Point, 381 N.C. 287, 294 (2022). Public official immunity is intended "to shield public officials from tort liability when those officials truly perform discretionary acts that do not exceed the scope of their official duties." Id. Accordingly, "[a]n individual will not enjoy the immunity's protections if his action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." Id. (quotations marks and citation omitted). Moreover, an individual will not enjoy the immunity's protections if the immunity itself has been waived. Hogan v. Cherokee Cnty., 519 F. Supp. 3d 263, 286 (W.D.N.C. 2021) (citing Clayton v. Branson, 153 N.C. App. 488, 492–93 (2002)). And relevant here, "[a] county may waive its immunity by purchasing liability insurance covering a particular risk." Id. (citing Ballard v. Shelley, 257 N.C. App. 561, 565 (2018)).

Here, Plaintiff's amended complaint alleges that public official immunity has been waived. Specifically, paragraphs 11 and 14 of the amended complaint notify Defendant City that a waiver of immunity has been alleged. (Doc. No. 1-1). Accepting as true all of the factual allegations in the amended complaint, and drawing all reasonable inferences in the light most favorable to the plaintiff, Plaintiff has pled sufficient facts to support liability against Defendant City at this stage of the case, because Plaintiff has alleged a waiver of public official immunity.

5

### b. Contributory Negligence

Defendant City additionally argues that Plaintiff's contributory negligence bars Plaintiff's claims. Plaintiff through his guardian ad litem responds that he was not contributorily negligent in causing his injuries and therefore Plaintiff's claims are not barred.

Contributory negligence is "the breach of duty of a plaintiff to exercise due care for his or her own safety, such that the plaintiff's failure to exercise due care is the proximate cause of his or her injury." Prior v. Pruett, 143 N.C. App. 612, 622 (2001). "In order to prove contributory negligence on the part of a plaintiff, the defendant must demonstrate: (1) a want of due care on the part of the plaintiff; and (2) a proximate connection between the plaintiff's negligence and the injury." Proffitt v. Gosnell, 257 N.C. App. 148, 152 (2017). Furthermore, "a plaintiff cannot be guilty of contributory negligence unless he acts or fails to act with knowledge and appreciation, either actual or constructive, of the danger of injury which his conduct involves." Prior, 143 N.C. at 623 (citing Clark v. Roberts, 139 S.E.2d 593, 597 (1965)).

Under North Carolina state law, contributory negligence acts as a complete bar to a plaintiff's recovery from a defendant "who commits an act of ordinary negligence." Sorrells v. M.Y.B. Hosp. Ventures of Asheville, 332 N.C. 645, 647 (1992).

Here, contributory negligence, if found, does not bar Plaintiff's claims. First, Plaintiff's complaint alleges gross negligence. The North Carolina Supreme Court has ruled that "a plaintiff's ordinary contributory negligence is not a bar to recovery when a defendant's gross negligence, or willful or wanton conduct, is a proximate cause of the plaintiff's injuries." Davis v. Hulsing Enters, LLC, 370 N.C. 455, 459 (2018) (citation omitted). Because Plaintiff alleges gross negligence on the part of Defendant Vivas, and that gross negligence is imputed to Defendant City, contributory negligence cannot bar Plaintiff's claim at this stage. Second, the

Plaintiff was a minor when the events leading to this case occurred. Regardless of whether Defendant Vivas' conduct rises to gross negligence, a minor's obligation to use due care for his own safety "must be measured in the light of his relative maturity, his knowledge, and his capacity to comprehend the dangers of existing conditions." Union Carbide & Carbon Corp. v. Peters, 206 F.2d 366, 371 (4th Cir. 1953). Whether a minor can be held accountable for contributory negligence "depends not so much on his age as on his capacity, discretion, knowledge, and experience." Porter v. United States, 128 F. Supp. 590, 594 (E.D.S.C.), aff'd, 228 F.2d 389 (4th Cir. 1955). The minor's age discretion, knowledge, and experience remain disputed factual issues. These factual issues must be resolved before contributory negligence can be determined. Therefore, at this stage, Plaintiff's claims are not barred by contributory negligence.

### c. Negligent Infliction of Emotional Distress

Defendant City argues that Plaintiff has not adequately pled a negligent infliction of emotional distress claims. Linda Washington has not formally asserted herself as a party in her individual capacity, and therefore this Court will limit its analysis to Plaintiff's negligent infliction of emotional distress claim.

To state a claim for negligent infliction of emotional distress a plaintiff must demonstrate: (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff to suffer severe emotional distress; and (3) the conduct did, in fact, cause the plaintiff to suffer severe emotional distress. A.G. v. Fattaleh, No. 520CV00165KDBDCK, 2022 WL 2758607, at *5 (W.D.N.C. July 14, 2022); See also Best v. Duck Univ., 337 N.C. 742, 752 (1994).

Here, Plaintiff alleges Defendant Vivas' engaged in negligent conduct that could foreseeability cause emotional distress to Plaintiff. However, even if Plaintiff was able to establish negligent conduct occurred, and that it would foreseeably cause severe emotional distress, Plaintiff does not provide sufficient facts to support the contention that Plaintiff has indeed suffered severe emotional distress. Tigrett v. Rector & Visitors of Univ. of Virginia, 290 F.3d 620, 629 (4th Cir. 2002) ("[P]laintiff must establish that [he] suffered demonstrable emotional distress, which must be sufficiently articulated.") (quotation omitted).

Being tackled, handcuffed, and placed in a holding room is humiliating, jarring, and worrying. However, North Carolina law has provided a more demanding definition for severe emotional distress. North Carolina law defines severe emotional distress as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so, ... mere temporary fright, disappointment or regret will not suffice." Delk v. ArvinMeritor, Inc., 179 F. Supp. 2d 615, 625 (W.D.N.C.) (citing Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A., 327 N.C. 283, 304 (1990)), aff'd, 40 F. App'x 775 (4th Cir. 2002).

While a plaintiff is not required "to plead severe emotional distress with great detail," a plaintiff still must allege facts that sufficiently support each element of a negligent infliction of emotional distress claim. Cauley v. Bean, 2022-NCCOA-202, ¶ 19, 282 N.C. App. 443, 450, review denied, 876 S.E.2d 281 (N.C. 2022), and review denied, 876 S.E.2d 289 (N.C. 2022). Here, Plaintiff's factual allegations do not suggest that Plaintiff suffered the mental anguish typically associated with severe emotional distress. Id. Therefore, this Court will dismiss Plaintiff's negligent infliction of emotional distress claim.

### d. Gross Negligence

Defendant City additionally argues that Plaintiff has not pled sufficient facts to establish a claim of gross negligence. Under North Carolina Law, gross negligence is defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others." F.D.I.C. ex rel. Co-op. Bank v. Rippy, 799 F.3d 301, 314 (4th Cir. 2015) (applying North Carolina law) (citing Yancey v. Lea, 354 N.C. 48, 550 S.E.2d 155, 157 (2001)). North Carolina courts have further defined wanton conduct as an act "done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." Id.

Plaintiff has pled sufficient facts to assert a claim of gross negligence against Defendant City, accepting as true all of the factual allegations in the Amended Complaint and drawing all reasonable inferences in the light most favorable to the plaintiff. Plaintiff asserts that Defendant Vivas "tackled and slammed Plaintiff to the ground" and that Plaintiff was needlessly handcuffed. (Doc. No. 1-1 at ¶ 33). Further factual development is required to assess whether Defendant Vivas' actions rise to the level of gross negligence. However, at this stage, Plaintiff has sufficiently alleged facts which support a claim of gross negligence, which would be imputed to Defendant City.

### e. Punitive Damages

Lastly, because underlying claims against Defendant City–including a claim for gross negligence–remain, Plaintiff's punitive damages claim will not be dismissed. Thompson v. Town of Dallas, 142 N.C. App. 651, 656 (2001) ("It is also well established that a defendant may be liable for punitive damages where his conduct reaches a level higher than mere negligence and amounts to willful, wanton, malicious, or reckless indifference to foreseeable consequences.").

## V. CONCLUSION

For the reasons stated herein, the negligent infliction of emotional distress claim against Defendant City must be dismissed. However, Plaintiff's remaining claims against Defendant City are not dismissed.

## ORDER

**IT IS THEREFORE ORDERED** that Defendant City's Motion to Dismiss, Doc. No. 10, is **GRANTED** in part and **DENIED** in part. In accordance with this order, Plaintiff's negligent infliction of emotional distress claim is dismissed.

Signed: March 10, 2023

Max O. Cogburn Jr
United States District Judge